**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **TAM-MONTA L. HASTINGS,** | § | |
| **TDCJ No. 02233120,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **Civil No. SA-20-CA-01279-XR** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Petitioner Tam-Monta L. Hastings's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent Bobby Lumpkin's Answer (ECF No. 13). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

In August 2018, Petitioner plead guilty to one count of aggravated assault with a deadly weapon and one count of aggravated robbery. (ECF No. 12-26 at 29-39). Following a separate punishment hearing, Petitioner was sentenced to ten years of imprisonment on each count, with the sentences to run concurrently. *State v. Hastings*, No. 2018CR8107 (399th Dist. Ct., Bexar Cnty., Tex. Sept. 28, 2018); (ECF No. 12-6 at 26-29). Although he waived the right to appeal as part of the plea bargain agreement, Petitioner nevertheless appealed his conviction to the Texas Fourth Court of Appeals. The appellate court dismissed the appeal pursuant to Texas Rule of

Appellate Procedure 25.2(d) because Petitioner had no right to appeal. *Hastings v. State*, No. 04-18-00913-CR, 2019 WL 691422 (Tex. App.—San Antonio, Feb. 20, 2019); (ECF No. 12-12). Petitioner did not seek further appellate review by filing a petition for discretionary review with the Texas Court of Criminal Appeals (TCCA). (ECF No. 12-16).

Instead, Petitioner challenged his convictions by filing an application for state habeas corpus relief. (ECF No. 12-19 at 4-16). The TCCA dismissed this first application because Petitioner's convictions were not yet final, as mandate had not issued at the time the petition was filed in the trial court. *Ex parte Hastings*, No. 89,784-01 (Tex. Crim. App.); (ECF No. 12-17). Shortly after his convictions became final, Petitioner filed a second state habeas application which was eventually denied without written order by the TCCA on October 7, 2020. *Ex parte Hastings*, No. 89,784-02 (Tex. Crim. App.); (ECF Nos. 12-25, 12-26 at 4-22).

Petitioner placed the instant federal habeas petition in the prison mail system on October 27, 2020. (ECF No. 1 at 11). In the petition, Petitioner raises the same allegations that were rejected by the TCCA during his state habeas proceedings—namely, that (1) his trial counsel rendered ineffective assistance by failing to explain what a plea bargain is and by coercing him to accept the plea, (2) trial counsel failed to argue that there was no physical evidence of a crime and failed to cross-examine witnesses on this point, (3) trial counsel failed to explain what reasonable doubt meant, (4) counsel failed to defend him by not investigating or bringing forth evidence of his innocence, and (5) there is new evidence of his innocence.

## II.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court

proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

## III. <u>Merits Analysis</u>

Pursuant to a plea bargain agreement, Petitioner judicially confessed to committing one count of aggravated assault with a deadly weapon and one count of aggravated robbery, acknowledged the range of punishment for each offense, and waived his right to a jury trial in exchange for a sentencing cap of twelve years. (ECF No. 12-26 at 29-39). Nevertheless, Petitioner now challenges the constitutionality of his convictions by arguing that his plea was involuntary (Claims 1, 3) and that he was denied his right to effective counsel (Claims 2, 4). Because he voluntarily plead guilty to the convictions he is now challenging under § 2254, however, Petitioner waived the right to challenge all non-jurisdictional defects in his proceedings. Moreover, these allegations were rejected by the state court during Petitioner's state habeas proceedings. As discussed below, the state court's rejection of these claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent. *Richter*, 562 U.S. at 101.

## A. <u>Petitioner's Plea Was Voluntary</u>

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389

(5th Cir. 1997). The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's plea was a voluntary and intelligent choice and not the result of any misrepresentation. To start, the voluntariness of Petitioner's plea is demonstrated by his signature on the "Court's Admonishment and Defendant's Waivers and Affidavit of Admonitions" and accompanying "Plea Bargain." (ECF No. 12-26 at 29-34). These documents demonstrate Petitioner was admonished as to the maximum punishment range for the second-degree offense of aggravated assault with a deadly weapon (two to twenty years of imprisonment) and first-degree offense of aggravated robbery (five to ninety-nine years or life imprisonment) but that Petitioner's sentence was to be capped at twelve years maximum. *Id.*

Petitioner also made the following concessions in his plea agreement:

1. I have had my Constitutional and legal rights explained to me by my attorney, and have decided to waive my Constitutional right of trial by jury and enter this plea before the judge. I hereby request the consent and approval of the State's Attorney and of the Court to my waiver of trial by jury. I further represent to the Court as follows:

2. I am mentally competent now and was legally sane at the time that this offense was committed.

3. I have not been threatened, coerced or placed in fear by any person to induce me to enter my plea.

4. If I have a plea bargain agreement with the prosecutor, its terms are fully set forth in the attached document. I have received no promise from the prosecutor, my attorney or the Court which are not set forth in that document, and I realize that no one else would be empowered to make me any promises.

5. If I am pleading GUILTY, it is because I am guilty, and for no other reason. If my plea is one of NOLO CONTENDERE, it is because I have

considered all aspects of my legal situation and discussed them with my attorney and have determined that the entry of such plea is in my own best interest.

6.      If applicable, my attorney has explained to me the requirements and consequences of Chapter 62 of the Texas Code Of Criminal Procedure Sex Offender Registration Program.

7.      I understand the Courts admonishments as contained in this waiver.

8.      I am satisfied with the advice and representation of my attorney in this case.

*Id*. Petitioner's trial counsel signed the agreement after concluding that Petitioner had a rational and factual understanding of the pending charges against him and the rights he was waiving, and the trial court approved the agreement by stating Petitioner was mentally competent and his waiver was knowing, intelligent, and voluntary. *Id*.

In addition, Petitioner signed a "Waiver, Consent to Stipulation of Testimony and Stipulations" where Petitioner stated he knowingly and voluntarily agreed to waive his rights to confrontation and cross-examination of witnesses and admitted that the allegations contained in the indictment are true and correct. *Id*. at 35-39. Counsel for Petitioner again signed the waiver, stating that he discussed with Petitioner the rights he was waiving and indicating his belief that Petitioner "fully understands these rights and has intelligently and voluntarily waived these rights and entered into these agreements after due deliberation[.]" *Id*. at 39. The trial judge then gave his approval of the waiver, concluding:

The Defendant having signed the Waiver, Consent to Stipulation of Testimony and Stipulations in open Court and under oath, the Court questioned both the Defendant and his Counsel and thereby became satisfied that the Defendant understands the rights which have been waived and therefore can be truly said to have voluntarily relinquished known rights. The Waiver, Consent to Stipulation of Testimony and Stipulations are approved and ORDERED filed in the papers of the cause.

*Id*.

Petitioner's signature on the guilty plea documents is *prima facie* proof of the validity of the pleas and is entitled to "great evidentiary weight." *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)).  Petitioner's formal declarations in open court (ECF No. 12-11) also carry "a strong presumption of verity" and constitute a formidable barrier to any subsequent collateral attack.  *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this Court denies any allegation made by Petitioner concerning the validity of his guilty plea.  *Blackledge*, 431 U.S. at 74 (finding "[t]he subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

**B.**     **Claims Waived by the Guilty Plea**

By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea.  *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013).  This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, includes ineffective-assistance claims unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea).  As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself.  *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

Here, Petitioner argues he was denied the right to effective counsel by counsel's failure to investigate and bring forth evidence of his innocence (Claim 4).  Petitioner also faults counsel for

failing to argue the lack of physical evidence or cross-examining witnesses who gave police statements implicating him (Claim 2).  But Petitioner fails to provide any argument in support of his allegations, much less demonstrate how the allegations relate to the voluntariness of his guilty plea.  Accordingly, Petitioner's claims are waived by his knowing, voluntary, and intelligent guilty plea.  Moreover, Petitioner fails to demonstrate that the state court's rejection of his allegations during Petitioner's state habeas proceedings was either contrary to, or an unreasonable application of, clearly established federal law.  For these reasons, federal habeas relief is denied.

**C.      The Remaining Ineffective-Assistance Claims**

Petitioner does make certain allegations that, if successful, may implicate the voluntariness of his plea:  that trial counsel failed to explain what a plea bargain was  (Claim 1) or define reasonable doubt for him (Claim 3), and also coerced him into pleading guilty.  According to Petitioner, counsel kicked him on the ankle to signal to Petitioner that he was to answer "yes" to the court's questions.  Again, a valid guilty plea waives all non-jurisdictional defects—including an IATC claim—unless the IATC claim goes to the voluntariness of the plea.  *Smith*, 711 F.2d at 682.  Thus, the Court considers Petitioner's ineffective-assistance claims to the extent they may implicate the voluntariness of his plea.  *Hill*, 474 U.S. at 56 (citing *Tollett*, 411 U.S. at 267).

The appropriate standard to evaluate the effectiveness of counsel with regard to a guilty plea is the familiar *Strickland* two-part test.  *Hill*, 474 U.S. at 58 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  Under *Strickland*, Petitioner must demonstrate (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  To establish counsel's performance was deficient, a petitioner must first show his counsel's

performance fell below "an objective standard of reasonableness." *Id*. at 688–89. But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S at 59. This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial." *Armstead v. Scott*, 37 F.3d at 206 (citations omitted). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*.

Petitioner contends his plea was involuntary because counsel did not explain what a plea bargain is, did not define reasonable doubt for him, and kicked him under the table in order to coerce him into pleading guilty. But as discussed previously, the plea agreement itself demonstrates Petitioner's awareness of the "relevant circumstances and likely consequences" of his plea. *Bradshaw*, 545 U.S. at 183. Petitioner's plea agreement also stated he understood the terms of the plea agreement, that his attorney has explained the legal effects of the agreement, and he was not coerced or misled into making the plea.

Further, Petitioner's arguments are controverted by the affidavit given by his trial counsel, Martin Guerra, during Petitioner's state habeas corpus proceeding. (ECF No. 12-36 at 71-77). Based on counsel's affidavit, the state habeas trial court made the following findings:

> c.    On the morning of trial, counsel discussed the plea offer with [Petitioner] and three of his family members. It is counsel's practice to inform clients that they do not have to enter into a plea, to discuss the strengths and weaknesses of the case, and to inform clients that the decision to go to trial is a personal choice. Counsel followed this practice with [Petitioner] and [Petitioner] did not say or do anything to suggest he was feeling coerced into entering a plea.

> d.    Counsel thoroughly discussed the terms of the plea bargain with [Petitioner] and meticulously reviewed the plea paperwork with [Petitioner] ensuring that he understood the plea process, his rights, and

the rights he was relinquishing. [Petitioner] did not do or say anything to suggest that he did not understand the terms of the plea agreement.

e.  Counsel never kicked [Petitioner] in an attempt to pressure, threaten, or coerce [Petitioner] into taking the plea.

f.  Counsel communicated with [Petitioner]'s family after sentencing and was never informed of new evidence or that they were dissatisfied with counsel's representation of [Petitioner].

g.  [Petitioner] was informed of the evidence in the form of physical evidence and witness statements that would inculpate [Petitioner] and be used to support the State's case.

h.  Counsel advised [Petitioner] of the State's burden to prove each element of the offense beyond a reasonable doubt.

i.  Counsel never instructed [Petitioner] to "be quiet" or threatened that [Petitioner] would receive the maximum sentence if he spoke.

j.  Counsel thoroughly reviewed [Petitioner]'s case and conducted negotiations with prosecutors over several court settings.

k.  It was [Petitioner]'s decision to accept the plea bargain. Counsel did not attempt to coerce or pressure [Petitioner] into taking the deal. [Petitioner] did not express any concern with counsel's representation and was grateful that he could ask the court for deferred adjudication and present witnesses to speak on his behalf.

*Id*. at 66-67. The trial court concluded that Petitioner "failed to show that he received ineffective assistance of counsel or entered into his plea involuntarily based upon ineffective assistance of counsel as alleged in grounds one, two, three, and four." *Id*. at 69. The TCCA then rejected Petitioner's state habeas corpus application on the merits without written order based on the trial court's factual findings as well as on the court's own independent review of the record. (ECF No. 12-25).

Petitioner has failed to furnish this Court with any evidence, much less any clear and convincing evidence, showing the state habeas court's factual finding on this subject was incorrect. *See Matamoras v. Stephens*, 783 F.3d 212, 216 (5th Cir. 2015) (recognizing the presumption of correctness afforded a state habeas court's factual findings applies absent clear

and convincing evidence to the contrary); *Ward v. Stephens*, 777 F.3d 250, 268 (5th Cir. 2015) (same). Moreover, Petitioner's conclusory and unsupported allegations that counsel kicked him and coerced him into pleading guilty are not enough to establish deficient performance under *Strickland*. *See United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("[C]onclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel.") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Therefore, Petitioner fails to establish that his guilty plea was involuntary due to any alleged deficiencies in counsel's performance.

Regardless, even assuming counsel was deficient, Petitioner cannot show he would not have accepted the current plea and would have instead insisted on going to trial but for counsel's error. *Armstead*, 37 F.3d at 206. Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id.* The record is silent as to whether Petitioner would have made the decision to plead not guilty and go to trial had counsel further explained the plea bargain and reasonable doubt to Petitioner. In signing the waiver and stipulations of the trial court, however, the record does indicate that counsel fully explained his rights and the plea agreement to Petitioner and that Petitioner understood the plea was for a second-degree felony with the possible sentence of up to twenty years of imprisonment and a first-degree felony with a possible life sentence. Petitioner also admitted he committed the offenses and agreed with the State's punishment cap of twelve years. Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to go to trial.

In light of the record evidence supporting the voluntariness of his guilty plea, in addition to the fact Petitioner failed to prove counsel's performance was deficient or his plea was involuntary due to ineffective assistance of counsel, this Court must find Petitioner entered into

his plea voluntarily, knowingly, and intelligently. Moreover, Petitioner completely failed to prove that, but for his attorney's actions, he would have chosen to proceed to trial. Petitioner has therefore failed to establish a valid ineffective-assistance claim. *Hill*, 474 U.S. at 58. Accordingly, federal habeas relief must be denied because Petitioner fails to meet his burden of proof under the AEDPA. 28 U.S.C. § 2254(d).

## D. <u>Actual Innocence</u>

In his final allegation (Claim 5), Petitioner contends there is "new evidence" indicating he did not commit the underlying offenses. (ECF No. 1 at 7). According to Petitioner, this new evidence is in the form of recorded statements from the victim stating that Petitioner did not commit the offenses for which he was charged. This new evidence was not presented to the state habeas court and has yet to be made available to this Court. Nevertheless, because Petitioner's claim of actual innocence is not a cognizable federal habeas claim, the merits of the allegation need not be reached.

"Freestanding" claims of actual innocence, such as the allegation now before the Court, do not provide a valid basis for federal habeas relief. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 399. Although the *Herrera* court left open the question of whether, in a capital case, "a truly persuasive demonstration of 'actual innocence' made after trial would . . . warrant habeas relief if there were no state avenue open to process such a claim," 506 U.S. at 417, the Fifth Circuit has

consistently rejected this theory.[1]  *See Cantu v. Thaler*, 632 F.3d 157, 167 (5th Cir. 2011); *In re*

*Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Graves v. Cockrell,* 351 F.3d 143, 151 (5th Cir.

2003) (collecting cases).  Because the Fifth Circuit does not recognize freestanding claims of

actual innocence on federal habeas review, Petitioner's allegation must be rejected.

Alternatively, even if an actual-innocence claim could be the basis for federal relief, it

would only be cognizable if there were no state procedure available for making the claim.

*Herrera*, 506 U.S. at 417; *Graves*, 351 F.3d at 151.  Such is not the situation in Texas, where

state procedures are available to raise claims in clemency proceedings or a state habeas petition.

*See* Tex. Crim. Proc. Code art. 48.01 (West 2020); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th

Cir. 1998).  Indeed, this allegation was raised by Petitioner during his state habeas corpus

proceedings and ultimately rejected by the TCCA.  Thus, Petitioner's freestanding claim of

actual innocence must be denied.

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA).  *See*

Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322,

335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).  A COA may issue only if a petitioner makes "a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  If a district

court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate

"that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong."  *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).  This requires a petitioner to

show "that reasonable jurists could debate whether the petition should have been resolved in a

---

[1]      In later revisiting the issue of actual innocence, the Supreme Court declined to resolve the question of
whether freestanding actual-innocence claims are to be recognized in federal habeas proceedings.  *House v. Bell*,
547 U.S. 518, 555 (2006).

different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. <u>Conclusion and Order</u>

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings. Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.     Federal habeas corpus relief is **DENIED** and Petitioner Tam-Monta L. Hastings's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.     No Certificate of Appealability shall issue in this case; and

3.     All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this the 23rd day of June, 2021.

_____
      **XAVIER RODRIGUEZ**
      **United States District Judge**

14